[No. 18001. Department One. December 20, 1923.]

WALTER B. FOGH et al., Appellants, v. EAST WATERWAY DOCK AND WAREHOUSE COMPANY, Respondent.[1]

CONTRACTS (60, 63)—CONSTRUCTION—EXTENSION OF CONTRACT— TERMS AND CONDITIONS—COST OF EQUIPMENT. Under a contract whereby a can cutting company was, within a period of six months, to receive six million oil cans for cutting, for a fixed compensation, provided that, if less than that number of cans were furnished, it was to be paid the cost of installing its machinery, less fifteen per cent, upon payment of such costs the contract is fully executed as to the reimbursement for the cost of installation, and upon a "renewal" of the contract for a second period of six months, the company is not entitled to receive the cost of installation if less than six million cans are furnished during the period.

Appeal from a judgment of the superior court for King county, Carey, J., entered March 23, 1923, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Preston, Thorgrimson & Turner*, for appellants.

*Chadwick, McMicken, Ramsey & Rupp* and *Stephen F. Chadwick*, for respondent.

PARKER, J.—The plaintiffs, copartners under the firm name of American Can Cutting Company, seek recovery upon a contract entered into by them with the defendant, dock company, by the terms of which they were to render services to the dock company in the opening of cans of imported oil and of transferring the oil into bulk for shipping and marketing in this country. A trial upon the merits in the superior court for King county, sitting without a jury, resulted in findings and judgment denying to the cutting company any recovery, from which they have appealed to this court.

[1]Reported in 221 Pac. 302.

Our problem is one of construction of the contract, or rather of the renewal of it. The facts are not in dispute and may be summarized as follows: On October 28, 1918, the cutting company was the owner of an invention consisting of certain machinery and a process by the use thereof for the cutting open and emptying of cans of oil and for the crushing and baling of the empty cans. The dock company was engaged in the business of operating a dock at Seattle at which were received oils imported in cans from the Orient. While it was seemingly necessary to put the oil in cans for shipment by water, it was evidently more efficient to have the oil transferred into bulk for shipment and marketing in this country. On October 28, 1918, the contract here to be considered was entered into between the cutting company and the dock company. After general introductory recitals in the contract evidencing generally its purpose, its terms, in so far as we need here notice them, are as follows:

"It [cutting company] will install and equip the necessary heating coils and sluicing pipes, and other appurtenances, in the dumping tables furnished for that purpose by the dock company; the number of dumping tables so to be equipped to be sufficient to handle the oil that comes to the dock for such handling. This equipment and installation of coils, pipes and appurtenances, other than the dumping tables themselves, to be at the expense of the cutting company, provided, that during the six months period covered by this contract the cutting company is furnished by the dock company with not less than six million cans of oil to be cut and emptied. If during such six months' period the number of cans so furnished by the dock company for that purpose is less than six million, then in such event, at the end of such six months' period, the dock company shall pay the cutting company the original cost of installation and equipment of the necessary heating coils and sluicing pipes and other

appurtenances thereto; less fifteen (15) per cent of the same; . . . The cutting company shall furnish the dock company with the invoices or copies of same of material and labor procured in such installation or equipment within five days following the receipts of same so that the dock company have an opportunity to check the same if it should so desire. . . .

. "The operation under this contract shall commence on the 15th of December, 1918, and shall continue for a period of six months thereafter. . . .

"During the six months period covered by this contract and if this contract shall be renewed or be modified and renewed for an additional period of not less than two and one half (2½) years, then during the period covered by such renewal, the cutting company will not use or so far as lies in their power, permit to be used their machines or process on Puget Sound for or by any other company or person than the dock company.

"It is further mutually agreed: That the dock company may have an extension of this contract for an additional period of six months upon all and singular, the same identical terms as are herein contained, provided notice of the intention to elect to have such extension shall be given to the cutting company not later than May 15th, 1919."

The installing of the equipment and operation thereof and the work contemplated were proceeded with by the cutting company, the dock company paying for such services from time to time at so much per can as agreed upon. During the original six months' period specified in the contract, there were furnished by the dock company only 1,028,065 cans to be cut, emptied and crushed by the cutting company. That being less than 6,000,000 cans, the cutting company thereby became entitled to receive from the dock company the cost of installing the equipment above noticed in the first quoted paragraph of the contract, less 15 per cent. This was found and agreed by the parties to be

$7,549.52, and was in due time paid by the dock company to the cutting company, in addition to the agreed compensation per can for the services rendered by the cutting company.

On June 17, 1919, the dock company gave to the cutting company notice of its election to have the contract extended for another six months' period. While this was after the time for giving such notice as specified in the contract, the cutting company accepted it as being timely given and proceeded with the work accordingly. During the second six months' period there were furnished by the dock company and cut, emptied and crushed by the cutting company 2,022,464 cans, for which services the dock company paid the cutting company the agreed price per can. At the end of the second six months' period, the dock company having furnished less than 6,000,000 cans, the cutting company again demanded payment for the cost of the installing of the equipment specified in the first above quoted paragraph of the contract, less 15 per cent, to wit, $7,549.52, recovery of which 'is sought in this action.

The claim of the cutting company is rested upon the theory that the last above quoted clause of the contract, providing for its extension of an additional six months' period, and the extension of the contract accordingly, constitutes, in effect, a new contract as if originally entered into at the beginning of the second six months' period, accompanied by the installing of the equipment by the cutting company specified in the first above quoted paragraph of the contract as of that time. Counsel for the cutting company rely particularly upon the language of the last above quoted paragraph of the contract that such extension was intended to become ''upon all and singular, the same identical

terms as are herein contained.'' We have but little trouble agreeing with this contention in so far as the contract remains executory; that is, in so far as further duties and obligations are to be performed according to its terms after the beginning of the second six months. But it seems quite plain to us that, as to compensating the cutting company for the installment of the equipment specified in the first paragraph of the contract above quoted, to the extent of the cost of such equipment, less 15 per cent, that portion of the contract has wholly ceased to be executory, but has, in all things in that respect, been fully executed and performed by both parties; the cutting company having done all that it was required to do in that respect, and the dock company having paid all that it was required to pay with reference to the installing of such equipment. Plainly, we think the cost of the installing of the equipment, less 15 per cent, was not, under any circumstances, intended by the parties to be paid for a second time.

Some contention is made in behalf of the cutting company that the trial court erred to its prejudice in excluding certain evidence offered in its behalf upon the trial. We deem it sufficient to say that it seems plain to us that this offered evidence would, if received and given the effect claimed for it by counsel for the cutting company, work a variation of what seems to us the plain terms of the written contract, and was, therefore, properly excluded.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.